**In Re Anonymous No. 102 D.B. 84**

Disciplinary Board Docket No. 102 D.B. 84.

## I. PROCEDURAL HISTORY

| | |
|---|---|
| Petition for Discipline | December 19, 1984 |
| Acceptance of Service | January 3, 1985 |
| Answer to Petition | January 28, 1985 |
| Reference to Hearing Committee | January 29, 1985 |
| Hearing | April 12, 1985 |

## II. DISCIPLINARY RULES UNDER CONSIDERATION

Assistant disciplinary counsel asserts that respondent has violated the following Disciplinary Rules of the Code of Professional Responsibility:

Rule 1-102(A)(3): A lawyer shall not engage in illegal conduct involving moral turpitude;

Rule 1-102(A)(4): A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

Rule 1-106(A)(6): A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

Rule 7-101(A)(3): A lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship;

Rule 9-102(A): All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which

the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein;

Rule 9-102(B)(4): A lawyer shall promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

## III. BRIEF SUMMARY

Respondent is an attorney who is 46 years of age and was admitted to practice law in the Commonwealth of Pennsylvania on October 13, 1972. He currently maintains his offices at [    ]. The assistant disciplinary counsel has brought a series of purported infractions stemming from three separate instances. With respect to all three, it is contended that respondent violated the disciplinary rules by commingling funds of clients which were received by him, into accounts of his own and failing to promptly pay over and deliver to the clients, funds, securities or other properties in respondent's possession to which the clients were entitled. Respondent admits the commingling of funds, however, denies the averment that there was any intention to convert any of these funds for his own purposes.

The first set of circumstances relating to the commingling of funds involves the case of [A] who retained respondent to seek damages as a result of an automobile accident in which she was involved on June 20, 1981 in [    ] County. On or about March 9, 1983, respondent forwarded the matter to one [B], Esq., who acted as local counsel for respondent in the case, and it was settled in September of 1983 in the total amount of $10,500. After deducting a fee of $500, [B] forwarded $10,000 to respondent representing the proceeds of the settlement. This check was deposited in respondent's business account at

the [ ·] National Bank of Pennsylvania in account no. [ ], in which account respondent maintained personal funds and paid personal and business-related bills. Between October 7, 1983 and November 30, 1983, respondent failed to deposit or maintain the $10,000 settlement proceeds in an identifiable client's escrow or trust account or other account maintained for clients funds. On October 28, 1983, respondent sent [A] a check dated October 7, 1983, in the amount of $6,629.17 as part of her proceeds of the settlement, said check having been drawn on the aforementioned account. [A] deposited the check which was dishonored and, upon specific instructions from respondent's secretary and respondent on two separate occasions to redeposit the check, it was found to be dishonored again. On November 30, 1983, [C], Esq., an acquaintance of respondent, delivered a substituted treasurer's check to [A] in the sum of $6,630. Respondent admits the commingling of funds, admits that the payment to [A] was not prompt and admits that at no time did respondent have permission or consent of [A] to use any portion of her funds. Petitioner contends that respondent knew or should have known that the check would be dishonored when he sent it to the [A] on October 28, 1983.

Petitioner further contends that respondent knew or should have known that there were insufficient funds to cover the check when he told [A] to redeposit the check. Finally, petitioner contends that respondent converted [A]'s funds when, with the knowledge of the insufficiency of funds to cover the [A] check, respondent drew himself a check on the account.

Petitioner avers a second instance of disciplinary rule infractions relating to the proceeds of a real estate settlement wherein respondent represented

one [D]. Respondent received the proceeds of a real estate settlement on behalf of [D] in the sum of $21,690.96. On October 12, 1983, respondent deposited the said $21,690.96 into his business account at [　] National Bank, the same account as that which was involved in the [A] matter and from which he paid personal, as well as business-related bills. On October 27, 1983, respondent effected a distribution of the funds to [D]. No allegations of conversion were made against respondent, however, it is averred and admitted respondent did commingle the [D] funds with funds of his own.

The third instance of alleged disciplinary rule violations involves the case of [E] and [F]. On or about November 23, 1983, respondent received $1,403.41 representing the proceeds of a settlement which he negotiated on their behalf. The $1,403.41 was placed in the same business and personal account at the [　] National Bank of Pennsylvania. From the period of November 23, 1983 until December 23, 1983, respondent failed to deposit or maintain the $1,403.41 in an identification client escrow trust account or an account maintained for the funds of [E] and [F] or other clients. On December 23, 1983, respondent distributed to [E] and [F] $776.65 from the same account as a distribution of their share of the proceeds from the settlement. It is agreed that at no time did respondent have the right to convert or use any portion of [E] and [F]'s proceeds for his own purposes.

Respondent admitted throughout the proceedings of the commingling of clients funds with his own funds and admitted that payment was not prompt with respect to [A]. He further acknowledged that he had no authority from either [E] and [F] or [A] to utilize their funds for his private purposes. He disputes any intention to convert or de-

fraud any parties and asserts as a defense that the errors arose by virtue of a bookkeeping mistake. During the period prior to September 13, 1983, respondent operated three separate accounts; a firm account, a trust account and personal account, all at [  ] Bank. On September 13, 1983, the Internal Revenue Service put a lien on all three accounts as a result of which, none of those accounts were available for use by respondent. By reason of the Internal Revenue Service lien, respondent opened one new account which was the account in which the checks in the [A], [D] and [E] and [F] matters were deposited. With respect to the [D] check, testimony from respondent's secretary and bookkeeper indicated that the check was deposited in respondent's account on October 12, 1983 and the check making payment to [D] cleared respondent's account on October 21, 1983. Concerning the check for the [E] and [F] matter, the receipt was deposited in respondent's account on November 23, 1983 and a check was mailed to them on December 9th, 1983 which cleared on December 23, 1983. In the case of the [A] check, respondent's secretary testified that on or about November 14, she had been reviewing respondent's checkbook and discovered a $1,500 error. Specifically, check number 123 had not been subtracted from the prior balance. Upon the discovery of the bookkeeping error, respondent directed the secretary to contact [A] and explain the possibility that the check might be dishonored, which contact was made. At that time, [A] indicated this to be no problem. Thereafter, a second error was found in subtraction for $1,000 on or about November 17, 1983. Respondent personally spoke with [A] on November 21, 1983 or on November 22, 1983 and again on November 28, 1983, and did advise [A] to redeposit the check. At the time of the second con-

versation with [A], respondent was aware that he did not have sufficient funds in his account to cover the check that he sent her on October 28. He specifically was made aware of this insufficiency when respondent told [A] to redeposit the check. He knew at the time that there were not sufficient funds in the checking account to cover the redeposited check, but simply hoped that when it was redeposited, there would be funds on hand to honor it. Regrettably, the funds did not get into the bank account and it bounced a second time.

Assistant disciplinary counsel presented testimony as to the inconvenience occasioned to [A] as a result of the bounced check and submitted copies of 13 checks written by [A] in reliance upon respondent's check which were dishonored. No testimony was presented concerning any inconvenience to [D] and evidence was received by agreement between the parties that [E] and [F] had no complaint concerning respondent's services.

At the time the [A] check remained dishonored, respondent nevertheless paid himself $500 out of the same account for pocket money, food and laundry.

Lengthy testimony was presented by respondent supporting his good name and reputation for truth and honesty, including the District Attorney of [ ] County, [G], and the former District Attorney of [ ] County, [H]. Additionally, former President Judge [I], testified as to his reputation for truthfulness as well as [J], Esq., President of the [ ] County Bar Association. [K] Esq., of the [ ] Bar Association, also gave character testimony on behalf of respondent.

Additionally, respondent testified that there have been three prior allegations of misconduct brought

against him in the form of letters of the Disciplinary Board; however, none has involved any discipline.

## IV. FINDINGS OF FACT

1. Respondent, [ ], is 46 years of age and has been a [ ] County resident through his entire life. He resides at [ ] and attended [ ] School, graduating in 1956, the University of [ ], graduating in 1961 and [ ] Law Center for two years. He did not graduate from [ ] Law Center, however, engaged in a formal reading law program approved by the State Board of Law Examiners, reading law with [L], Esq. and [M], Esq., of the [ ] County Bar and ultimately passed the Bar Examination in 1972.

2. Since passing the Bar, respondent has practiced law exclusively in [ ] County and is a member of the Courts of Common Pleas of [ . ] County, Superior Court, Commonwealth Court of Pennsylvania, Federal District Court and [ ] District Court of Pennsylvania. He has maintained an office in [ ] County, Pa., since October of 1972 and, although he has had associates from time to time, he has operated as a sole proprietorship since that time.

3. Prior to September of 1983, respondent had three bank accounts with the [ ] Bank for the operation of his personal funds, his business funds and escrow funds of clients.

4. In September of 1983, respondent's bank accounts were frozen by the Internal Revenue Service.

5. By reason of the liens of the Internal Revenue Service, respondent opened a new bank account at [ ] National Bank of Pa., and used that bank account from September of 1983, through January of 1984 for the purposes of his office account, personal account and client funds.

6. At all times relevant hereto, respondent commingled his funds with those of his clients and his

business expenses utilized the single account at [ ] National Bank of Pa. for all three purposes.

7. In June of 1981, respondent was requested by [A] to undertake her representation in a case relating to an automobile accident occurring in [ ] County, Pa.

8. On or about March 9, 1983, respondent engaged the assistance of [B], Esq., of [ ] County, who acted as local counsel in the [A] matter.

9. In early September of 1983, the [A] case was settled with the [ ] Insurance Company in the amount of $10,500, and, upon receipt of $10,500 on October 6, 1983, [B] forwarded to respondent $10,000 representing the balance of the proceeds of the settlement, less [B]'s agreed fee of $500.

10. The $10,000 forwarded to respondent was deposited in the [ ] National Bank of Pa., in the checking account heretofore referred to. On or about October 28, 1983, respondent's office forwarded a check dated October 7, 1983 to [A] in the amount of $6,629.17 in payment of the portion of the settlement due [A].

11. Upon receipt of the aforementioned check, [A] deposited the check on November 7, 1983 into her own account, which check was dishonored and her 13 checks drawn thereon were refused by her bank.

12. During the period of late September and early October of 1983, respondent had his checkbook kept by one [N], a high school student who was working part time in his office, and certain errors were made in connection with this account.

13. On at least two occasions after the issuance of the [A] check, respondent either personally or through his secretary advised [A] that there would be difficulty with the check and that she should redeposit the same.

244

14. On November 28, 1983, respondent actually spoke with [A] and again advised her to redeposit the check.

15. During the period of time when respondent knew or should have known of the difficulties concerning the [A] check and the balance in his account, he nevertheless took funds himself for his personal expenses from the same account.

16. On or about October 12, 1983, respondent, representing one [D], received $21,690.96 as proceeds from her real estate settlement.

17. The money from the [D] real estate settlement was commingled with the monies in the [ ] National Bank account, along with respondent's personal funds.

18. On October 27, 1983, respondent disbursed the sum aforesaid to [D] from the same account.

19. On or about November 23, 1983, respondent received a check in the amount of $14,03.41, as a settlement of a matter on behalf of [E] and [F].

20. The check received in the [E] and [F] settlement was commingled with other monies of respondent and various clients and placed in the checking account at the [ ] National Bank of Pa.

21. On December 23, 1983, respondent submitted a check in the amount of $776.65 to [E] and [F], in payment of their portion of the settlement proceeds, after deduction of fee.

22. With respect to all three instances, [A], [D] and [E] and [F], respondent had no authority to use their funds for his own purposes.

23. With respect to all three instances, respondent commingled his funds and those of other clients and failed to maintain separate client accounts.

24. During the period when there was difficulty relating to the [A] check of $6,629.17, respondent, nevertheless, took monies from the same single ac-

count and utilized them for his own personal purposes.

25. No testimony was presented by assistant disciplinary counsel which would indicate that the [D] or [E] and [F] cases caused any inconvenience to either [D] or [E] and [F] and, insofar as [E] and [F] are concerned, they submitted a letter advising that they had no complaint concerning respondent's representation or with the disbursement.

## IV. DISCUSSION

Respondent has been charged with six separate disciplinary rule infractions, all of which arise by reason of his commingling of funds and his failure to promptly deliver funds due his clients immediately upon receipt thereof.

From the commencement of this proceeding, it has been admitted by respondent that he commingled funds and that he had no permission to utilize any funds of clients for his own purposes. It has further been admitted that, at least with respect to the [A] matter, he did not promptly deliver funds to [A] to which she was entitled. By his own admission, therefore, respondent has violated Disciplinary Rule 9-102(A) in that he has failed to maintain the appropriate separate accounts by his commingling of funds. Additionally, it is admitted that respondent violated Disciplinary Rule 9-102(B)(4) in that he failed to promptly deliver the funds to [A] when requested to do so.

More difficult is the question as to whether or not respondent violated Disciplinary Rule 1-102(A)(3) by engaging in illegal conduct involving moral turpitude. Respondent contends that the difficulties with the [A] check arose by reason of an error in the checkbook that he was using at the time of the payment to [A] and that, by reason of the freezing of his

prior bank accounts, the entire series of events occurred. While this excuse might be advanced by respondent as a defense against criminal conduct, the committee believes that it constitutes some civil illegality. This civil illegality satisfies this committee that respondent's actions constitute illegal conduct involving moral turpitude. In the case of Yurick v. Com., Dept. of State, Bur. of Prof. and Occupational Affairs, 43 Pa. Commw. 248, 402 A.2d 290 (1979), the court defined moral turpitude on page 292 as follows:

"We further define moral turpitude as 'anything done knowingly contrary to justice, honesty, or good morals' ."

Based upon this definition, it seems clear that when respondent wrote himself a check for $500 (check 211) on November 25, 1983, he knew that there were insufficient funds to cover the amounts due [A]. Despite this knowledge, respondent wrote himself a check and, on November 28, 1983, advised [A] to redeposit the check which he knew or should have known would not be honored by the bank, in the hope that there might be funds on hand when it was redeposited. In the view of the board, this constitutes actions done knowingly contrary to honesty or good morals. Accordingly, we find respondent has violated Disciplinary Rule 1-102(A)(3). Further, the same actions on the part of respondent in the [A] case prove that he has violated Disciplinary Rule 1-102(A)(4) which admonishes a lawyer not to engage in conduct involving dishonesty, fraud, deceit or misrepresentation. Again, with respect to the [A] case, this board finds that respondent has violated that rule as well.

Concerning the charges of violating Disciplinary Rule 1-106(A)(6), it is the conclusion of this board that a case has not been made to demonstrate re-

spondent conducted himself in such a manner as to adversely reflect on his fitness to practice law. In respondent's credit, he does enjoy a good reputation amongst his peers for truthfulness and honesty and he did ultimately solve the problem with respect to [A] and paid her in full. Nothing presented to the board indicates that he is not a skilled practitioner or that he is unfit to practice law despite the other disciplinary involvement herein. Additionally, nothing presented by assistant disciplinary counsel suggests that respondent intentionally prejudiced or damaged his clients' case during the course of the professional relationship and, accordingly, the alleged violation of Disciplinary Rule 7-101(A)(3) has not been made out in this case.

## VI. CONCLUSIONS OF LAW

1. The proceedings before the committee were properly convened pursuant to Pennsylvania Rules of Disciplinary Enforcement.

2. Assistant disciplinary counsel has proven violation of Disciplinary Rule 1-102(A)(3), Disciplinary Rule 1-102(A)(4), Disciplinary Rule 9-102(A) and Disciplinary Rule 9-102(B)(4).

3. Assistant disciplinary counsel has failed to prove violation of Disciplinary Rule 1-106(A)(6) and Disciplinary Rule 7-101(A)(3) as charged.

4. Respondent is subject to and deserving of discipline.

## VII. RECOMMENDED DISPOSITION

Your hearing committee [    ], having found infractions of four Disciplinary Rules, recommends that respondent be subject to private reprimand.

## ORDER

ELLIOTT, *Chairman,* And now, this March 17, 1986, the report and recommendation of hearing committee [   ] dated October 17, 1985 is accepted; and it is ordered and decreed, that the said [respondent] of [   ] County, be subjected to private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania as provided in Rule 204(5) of the Pennsylvania Rules of Disciplinary Enforcement at the next session of this board. Costs are to be paid by respondent.